IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

MAR 2 0 2023

U.S. BANKRUPTCY COURT
BY _____ DEPUTY

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WAYNE THOMAS HARWELL, JR., | § | |
| | § | CASE NO. 22-51321-MMP |
| Debtor | § | |
| | § | CHAPTER 7 |
| CITY CENTER WICHITA FALLS LLC, | § | |
| CITY CENTER WF, LLC, | § | |
| | § | |
| Plaintiffs | § | ADVERSARY CASE NO. 23-05028-MMP |
| | § | |
| Vs. | § | |
| | § | |
| WAYNE THOMAS HARWELL, JR., | § | |
| | § | |
| Defendant | § | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

**TO THE HONORABLE MICHAEL M. PARKER, UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, Defendant, Wayne Thomas Harwell, Jr., (hereinafter referenced as

"Defendant") and for Defendant's Answer to Plaintiff's Original Complaint to Determine

Dischargeability of Debt would respectfully show the Court the following:

1. Defendant admits the allegations contained in paragraph number 1 of the Complaint.

   This court has jurisdiction to rule on the non-dischargeability complaint.

2. Defendant admits the allegations contained in paragraph number 2 of the Complaint.

   Venue is proper in the Western District of Texas, San Antonio Division.

3. Defendant denies the allegations contained in paragraph number 3 of the Complaint. Defendant queries whether either of the listed Plaintiffs have standing to bring this adversary.

4. Defendant admits the allegations contained in paragraph number 4 of the Complaint, in Part. Defendant is the Debtor in the above captioned Chapter 7 case and may be served at his residence. Nevertheless, Defendant is not aware that he can be deemed a citizen of the State of Texas. Defendant is a Citizen of the United States of America and a resident of the State of Texas.

5. Defendant denies the allegations contained in paragraph number 5 of the Complaint. Debtor's contract is with a person named Will Kelty, who represented himself as the owner City Center Apartments, located at 708 8th Street, Wichita Falls, TX. At no time did Debtor contract with any person doing business as City Center or with either of the 2 LLCs listed as Plaintiffs in this adversary—one of which has voluntarily terminated its existence as an LLC. Defendant does do HVAC work as Direct-Flo Heating & Air.

6. Defendant denies the allegations contained in paragraph number 6 of the Complaint. Defendant requires strict proof of same. Defendant alleges that he entered into a contract to install HVAC systems—but no other work—with Will Kelty, who represented himself as the owner City Center Apartments, located at 708 8th Street, Wichita Falls, TX. At no time did Debtor contract with any person doing business as City Center or with either of the 2 LLCs listed as Plaintiffs in this adversary—one of which has voluntarily terminated its existence as an LLC. The contract was for $173,000.00, of which, over 70% of the work had been completed. The remaining

30% would have been completed but for Will Kelty's unreasonable delay in installing the roof racks on which the condenser were to be installed upon.

7.  Defendant denies the allegations contained in paragraph number 7 of the Complaint. Defendant requires strict proof of same.  Defendant alleges that he entered into a contract to install HVAC systems—but no other work—with Will Kelty, who represented himself as the owner City Center Apartments, located at 708 8th Street, Wichita Falls, TX.  At no time did Debtor contract with any person doing business as City Center or with either of the 2 LLCs listed as Plaintiffs in this adversary—one of which has voluntarily terminated its existence as an LLC.  Mr. Kelty never disclosed that he was acting as the manager of either of the 2 listed LLC Plaintiff's.  Further, if Mr. Kelty was not the owner of the real property, he has no rights to assign to either LLC listed as Plaintiffs in this adversary.  To Defendant's knowledge and belief, no payments under the contract with Mr. Kelty were identified as coming from either of the 2 LLCs listed as Plaintiff's in this adversary, but instead from Mr. Kelty as owner of the property.

8.  Defendant denies the allegations contained in paragraph number 8 of the Complaint. Defendant requires strict proof of same.  Defendant's contract was with Mr. Kelty and not with either of the 2 LLCs listed above.  Defendant has no proof of any of the transfers of ownership being alleged.  Further, since Defendant's contract was not with the 2 LLCs listed as plaintiffs in this adversary, Defendant alleges that said transfers may not even be relevant.

9.  Defendant denies the allegations contained in paragraph number 9 of the Complaint. Defendant requires strict proof of same.  Defendant has not been provided any proof

of the allegations contained in paragraph number 9 or given an access to information that would prove said allegations.

10. Defendant denies the allegations contained in paragraph number 10 of the Complaint. Defendant requires strict proof of same. Defendant has not been provided any proof of the allegations contained in paragraph number 10 or given an access to information that would prove said allegations.

11. Defendant denies the allegations contained in paragraph number 11 of the Complaint. Defendant requires strict proof of same. Defendant did not make any misrepresentations to Mr. Kelty. In fact, it is impermissible for the Plaintiffs to try to introduce arguments or allegations that directly contradict the written contract. Defendant made no representation that contract was "turnkey;" in fact, the written—signed—contract is clear that "structural modifications including penetrations and bracing/blocking/framing supplied by others." Furthermore, no representations were made about size of manpower or timeline. The contract does not have a set timeline or schedule.

12. Defendant denies the allegations contained in paragraph number 12 of the Complaint. Defendant requires strict proof of same. No such misrepresentations were made. Defendant performed the work he did in a professional manner. Defendant has been in the HVAC business for over 30 years and has never been fired from a job or sued other than the job related to this adversary. In fact, the main reason that Defendant did not complete the job is that Mr. Kelty was unable to property manage the construction project, including but not limed to, unreasonably delaying Defendant's ability to install condensers by failing to have the roof racks said condensers were to

be installed upon—built and a timely manner.  Debtor did not abandon the project, but instead Mr. Kelty terminated the contract before the Defendant was able to install the condenser after the huge delay in construction of the roof racks.  In fact, at the time Mr. Kelty terminated the contract the roof racks had not been completed and property anchored to the roof structure; which made the installation hazard to the public.

13. Defendant denies the allegations contained in paragraph number 13 of the Complaint. Defendant requires strict proof of same.  In fact, the condensers were ordered and brought to the Baker Distributing distribution warehouse due to space limitations at the Wichita Falls Baker location.  Pursuant to the draw request the condensers were to be held by the supply house until the roof racks were complete, the crane had been ordered and Defendant's schedule had availability for Defendant to return to the Wichita Falls job—due to being at another job because of the unreasonable delay in building the necessary roof racks by Mr. Kelty.  The store manager for Baker Supply Wichita Falls, Chased Thompson, and I discussed the lead time to get the condensers on site once the roof racks were built, the crane ordered and I was ready to set them. The roof racks were not complete on January 9, 2019 as suggested in the complaint, and they weren't even complete on January 15, 2019. Mr. Kelty sent a text message with a picture of the roof racks on January 26, 2019 at 4:06 PM (A Saturday afternoon) proclaiming that the racks were built. After examining the picture sent by Mr. Kelty, I noticed that the racks were not complete; they were not anchored to the concrete roof structure. The condensers were to be secured to the racks which in turn were to be secured to the roof structure to prevent them from getting blown off of the

roof in the event of a severe storm with high winds. This is best practices for safety in an installation like this, and generally required. Further, I did not delay the construction project; I spoke with Melanie Key, who was the journeyman electrician representing the electrical company on site, who assured me that not having the condensers set was not holding them up. She told me that they still have plenty of work to do on the second floor in particular.

14. Defendant denies the allegations contained in paragraph number 14 of the Complaint. Defendant requires strict proof of same. The condensers were ordered and brought to the Baker Distributing distribution warehouse due to space limitations at the Wichita Falls Baker location. Pursuant to the draw request the condensers were to be held by the supply house until the roof racks were complete, the crane had been ordered and Defendant's schedule had availability for Defendant to return to the Wichita Falls job—due to being at another job because of the unreasonable delay in building the necessary roof racks by Mr. Kelty. There were no repeated request that Defendant deliver the condensers, but instead Mr. Kelty's request was that Defendant set/install the condensers despite the roof racks not being properly anchored, which would have created a public safety hazard, for which Defendant would have been blamed. Defendant had a sufficient line of credit available to pay for the condensers prior to being sued by Mr. Kelty, which caused Defendant to have to spend substantial funds to defend Mr. Kelty's frivolous allegations.

15. Defendant denies the allegations contained in paragraph number 15 of the Complaint. Defendant requires strict proof of same. Any delays on the project were caused by Mr. Kelty's inability to property manage/supervises/coordinate the project.

Defendant suffered financial harm due to Mr. Kelty's unreasonable delay in building and properly securing the roof racks required for Defendant to install the condensers. This unreasonable delay by Mr. Kelty resulted in Defendant having to go to another project as he could go no further with the installation of the condensers until the roof racks were built and properly secured. Further, to Defendant's knowledge, Mr. Kelty's project was hampered and future delayed after Defendant's contract had been terminated by multiple shootdowns, Mr. Kelty's hiring of unlicensed individuals that were left unsupervised to complete Defendant's contract. Resulting in Mr. Kelty to have to hire licensed HVAC technicians to repair and finish the work done by the unlicensed individuals that Mr. Kelty had hired after he terminated Defendant's contract. In fact, Mr. Kelty was unable to qualify for a certificate of occupancy until October 3rd, of 2019; which was over 8 months from where Mr. Kelty terminated Defendant's contract.

16. Defendant denies the allegations contained in paragraph number 16 of the Complaint. Defendant requires strict proof of same.

17. Defendant denies the allegations contained in paragraph number 17 of the Complaint. Defendant requires strict proof of same. Defendant did not commit fraud.

18. Defendant denies the allegations contained in paragraph number 18 of the Complaint. Defendant requires strict proof of same. The condensers were ordered and brought to the Baker Distributing distribution warehouse due to space limitations at the Wichita Falls Baker location. Pursuant to the draw request the condensers were to be held by the supply house until the roof racks were complete, the crane had been ordered and Defendant's schedule had availability for Defendant to return to the Wichita Falls

job—due to being at another job because of the unreasonable delay in building the
necessary roof racks by Mr. Kelty.    Mr. Kelty terminated Defendant's contract prior
to the roof racks being competed; which included properly securing them to the roof
structure for safety of the public.

19. Defendant admits the allegations contained in paragraph 19 of the Complaint.

20. Defendant denies the allegations contained in paragraph number 20 of the Complaint.
    Defendant did not commit any type of fraud or other misconduct alleged in paragraph
    number 20.

21. Paragraph 21 is a statement and requires no response.

22. Defendant denies the allegations contained in paragraph number 22 of the Complaint.
    Defendant made no misrepresentations and would have completed the project but for
    Mr. Kelty's inability to properly manage the project, including but not limited to
    timely completing the roof racks.    If anyone misrepresented anything it was Mr.
    Kelty, who failed to tell Defendant that the building had asbestos in the floors that
    Defendant was to work in.  Had Defendant been informed of this he would not have
    taken the job.  Further, after terminating Defendant's contract Mr. Kelty fraudulently
    used Defendant's wholesale/contractor HVAC account to purchase
    equipment/material/refrigerant at Defendant's discounted price as a contractor, saving
    Mr. Kelty approximately $14,000.00 between what he paid using Defendant's
    discount to what he would have paid as a consumer.

23. Defendant denies the allegations contained in paragraph number 23 of the Complaint.
    Defendant made no misrepresentations and would have completed the project but for
    Mr. Kelty's inability to properly manage the project, including but not limited to

timely completing the roof racks. The delay in completing the roof racks in a timely manner is what caused the Defendant to not be able to complete the job. Defendant had sufficient funds or credit available to pay for the condenser.

24. Defendant denies the allegations contained in paragraph number 24 of the Complaint. Defendant requires strict proof of same. Defendant did not commit fraud. Mr. Kelty prevented Defendant from completing the job and a timely manner.

25. Paragraph 25 is a statement and requires no response.

26. Defendant denies the allegations contained in paragraph number 26 of the Complaint. Defendant requires strict proof of same. Defendant did not commit fraud. Mr. Kelty prevented Defendant from completing the job in a timely manner. It was not the lack of funds that prevented Defendant from installing the condensers and completing the job, but instead Mr. Kelty's unreasonable delay and his cancellation of the contract before completing the roof racks necessary for Defendant to install the condensers was the cause of Defendant's inability to complete the job. The condensers were ordered and would have been delivered and installed had the roof racks been completed and properly anchored for public safety.

27. As to COUNT III paragraph "25", this is mis-numbered and should be numbered paragraph 27, and is a statement requiring no response.

28. As to COUNT III paragraph "26", this is mis-numbered and should be numbered paragraph 28; Defendant denies the allegations contained in paragraph number 28 of the Complaint. Defendant requires strict proof of same.

29. As to COUNT III paragraph "27", this is mis-numbered and should be numbered paragraph 29; Defendant denies the allegations contained in paragraph number 29 of the Complaint. Defendant requires strict proof of same.

30. As to ATTORNEY'S FEES, COSTS AND EXPENSES paragraph "28", this is mis-numbered and should be numbered paragraph 30; Defendant denies the allegations contained in paragraph number 30 of the Complaint.

31. Defendant denies the allegations contained in the prayer portion of the Complaint.

32. Defendant prays an Order of this Court dismissing this Complaint and for his reasonable attorney's fees and costs incurred herein for his defense.  Defendant further alleges that Plaintiff should be required to pay into Debtor's Chapter 7 estate any damage award for pre-petition lost profits caused by Mr. Kelty's delay, damages related to Mr. Kelty fraudulently using Defendant's wholesale/contractor account and pre-petition attorneys fees incurred in defending the state court lawsuit filed by Plaintiffs against Defendant.

33. Affirmative Defense: Debtor believes that the claim of Plainfiff(s) may be barred by the statute of limitations.

WHEREFORE, having fully answered, Defendant prays for an Order of this Court dismissing the Complaint herein; for his attorney's fees and costs incurred for legal representation in his defense; and for such other additional orders as this lawful court seems just and proper.

Wayne Thomas Harwell, Jr.
*Pro Se party*
PO Box 461321

San Antonio, TX 78246
Telephone Number: 210-710-4056
EMail: directflohvac@gmail.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing above document was served on Monday March 20, 2023, via electronic means on the attorneys listed below, who have made appearances as attorneys for Plaintiff(s) in this adversary:

Charles A. Riley
Riley & Riley
320 Lexington Ave.
San Antonio, TX 78215
Email: charlesriley@rileylawfirm.com

H. Anthony Hervol
4414 Centerview Drive, Ste 207
San Antonio, TX 78228
Email: hervol@sbcglobal.net

Wayne Thomas Harwell, Jr.